The action was for an injury to the plaintiff caused by a kick from one of defendant’s horses. The petition alleges that plaintiff was in the employ of defendant as hostler, subject to the orders of the superintendent; that, acting under his orders, and without fault oh his part, while attempting to administer medicine to a sore leg of said horse, he was kicked. The petition further alleges that the horse was vicious, which fact was known to the defendant and not communicated to the plaintiff.
At the conclusion of plaintiff’s case a motion for a non-suit was granted, and judgment given for the defendant. This pro *593 ceeding in error is brought to reverse said proceedings. It was contended, below, in support of the motion, that the plaintiff failed to show that the horse complained of was vicious, or known to be vicious; and, second, that the proximate cause of the injury was not the vicious tendency of the horse, but the plaintiff’s own carelessness.
The gravamen of the petition is that the horse which kicked plaintiff was a kicking or dangerous horse, and. that defendant knew this fact, and failed to communicate it to plaintiff, his servant.
On reading the entire record, we think that there is evidence tending to show that the animal complained of was of vicious or kicking propensities. The testimony of one, Miller, who, on a former occasion, drove this horse, was to the effect that at that particular time the superintendent said to him, “Miller, look out; there is a kicking horse. And he also told me the gray horse was a kicking horse.” This same witness, later identifies a certain gray horse in the hospital as the horse he drove on the occasion referred to. The description given by this witness, of this horse, and of the sore on his leg, and of the treatment given to the horse, corresponds with the description of the gray horse detailed by plaintiff. Throughout the record it is observed that the plaintiff and Miller and counsel for the plaintiff, refer to “a” 'and “the” and “the big” gray horse. There seems to have been no confusion about the horse, and, from the manner in which the questions are answered, there seems to have been no other big gray horse. These circumstances, taken all together, we think made the identification of the horse sufficiently definite, and tended to establish the fact that the horse in question was the horse that was referred to as a kicking horse; and an allegation of fact may be established by circumstantial evidence Assuming, then, that the horse that kicked plaintiff was the same horse that the superintendent said “was a kicking horse,” was there evidence tending to show viciousness or kicking propensities in this animal, of a character to render defendant liable, keeping in mind that there was no evidence that the horse kicked while in the stable?
*594 The defendant in error contends that, in order to show viciousness, it is not enough to prove that a horse did bite or kick on one occasion (Reed v. Southern Express Company, 95 Ga., 108) ; or that proof that a horse balked or kicked on the road establishes a propensity to kick while in the stable; citing’ Bennett v. Mallard, 67 N. Y. Supp., 159; O’Conner v. Mooney, 66 N. Y. Supp., 486.
An examination of the Georgia case referred to, reveals that, in that case the plaintiff did not aver that the horse was a vicious horse, but seems to have relied simply on the ground that the animal was not in a rightful place at the time plaintiff was injured by him. The case, therefore, is not in point.
In Bennett v. Mallard, there appears to have been no evidence as to viciousness, except that the horse would balk and kick while drawing a load in the snow; and the court held that such evidence raised no presumption that he would kick while standing in his stall. And in the O’Conner v. Mooney case it appeared that no one had ever been kicked by the horse in question, nor had anyone there experienced any difficulty with the horse. Obviously, neither of these eases is applicable to the ease at bar, for the reason that in this ease there is evidence that before the injury the master (that is to say, the superintendent, who stands for the master) knew and said that the horse “was a kicking horse.” Nor was that statement qualified. While it is true there is no evidence that this particular1 horse kicked while in his stall, still we think the superintendent’s statement that he was a kicking horse was sufficient to send the case to the jury upon the question of viciousness. When it is shown the owner of the horse knows1 him to be a kicking horse, the law does not require a party, in order to enable him to recover for an injury inflicted, to show that the owner knew he would kick under the particular circumstances complained of. Negligently permitting plaintiff to care for a horse with a known propensity to kick is the gist of the complaint. It was said by Blodgett, J.:
“It is not necessary that the vicious acts of a domestic animal brought to the notice of the owner shall be precisely similar to that upon which the action against him is founded. *595 If it were, there would be no actionable redress for the first injury of the particular kind committed by such animal, because its owner would necessarily be exempt from all liability until it should commit another injury of exactly the same kind. ’ ’ (See Reynolds v. Hussey, 64 N. H., 64).
It was for the jury to say, under the circumstances, or on the inferences that it might draw from them, whether the horse was a dangerous or kicking horse (McGuire v. New York & Harlem Railroad Company, 60 N. Y. Sup. Ct. Reps., 368). In that case the owner of the horse claimed there was no evidence that the horse was vicious or dangerous or accustomed to attack or hurt those handling and earing for him. It appears that the animal ivas nervous when about to be shod,, and required tying. The servant was injured when in the stall about to feed the horse. He averred viciousness, and the court held the question of vieiousness was for the jury. (See also 11 Iredell Law, N. C., 269.)
We conclude, therefore, that, in the ease before us, there appearing to be, under the scintilla rule as it obtains in this state, testimony tending to prove the material averments of the petition, it was for the jury to determine whether, under all the circumstances, the horse was a vicious or kicking horse; and, if so, whether the owner knew that fact, or, by the exercise of reasonable oare, could have known that fact, and failed to communicate it to the plaintiff. See Thompson’s Commentaries on Negligence, Section 4041; McGuire v. New York & Harlem Railroad Company, supra; Ingham on Animals, 385.
On the question of contributory negligence, it can not be said, as matter of law, that plaintiff was guilty of contributory negligence. The defendant in error contends that the plaintiff was negligent because of the position he assumed behind the horse when he attempted to administer the medicine. But the record does not seem to bear out the inference thus drawn by defendant in error, on the question of location. There being a difference of opinion, therefore, as to the inferences to be drawn from conceded facts, under such circumstances the issue should go to the jury. ‘See Shearman and Redfield on Negligence, Section 54.
Otto J. Benner, for plaintiff in error.
T. B. Paxton, Jr., for defendant in error.
It can not be said, under tbe circumstances, that, as a matter of law, the servant assumed the risk of viciousness in the animal. A vicious animal furnished a servant by the master is on the same footing as a dangerous tool or machine; it is defective in a similar sense (Thompson’s Commentary on Negligence, Section 4041). In the case of Pennsylvania Company v. McCurdy (66 O. S., 118), the defect was an open, visible and observable one, and it was held an employe experienced in the service in which he is engaged is conclusively held to appreciate the dangers which may arise from defects of which he has, or in the exercise of due care might have, knowledge.
In the case at bar the servant did not know the animal was vicious, and so testified; and even though it should be found be was skilled in the service in which he was employed, it was for the jury to say whether, with that skill and experience, he might have discovered a defect which might only manifest itself on occasions. If it should be found that he did discover it, or might have discovered it, and then continued at the service, nevertheless, then, of course, he assumed the risk and would be guilty of contributory negligence.
For these reasons we are of opinion that the judgment should be set aside and a new trial granted.